IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| INTEGRATED SOLUTIONS<br>INTERNATIONAL, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) **MEMORANDUM OPINION**<br>) **AND RECOMMENDATION**<br>) |
| v. | )<br>) 1:07CV877<br>) |
| CENTRAL TRANSPORT,<br>INTERNATIONAL, INC., | )<br>)<br>) |
| Defendant. | ) |

This matter is before the court on cross-motions for summary judgment (docket nos. 32, 34). Both parties have responded in opposition to the other's motion, and the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the motions must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court deny both motions and that the matter proceed to trial.

BACKGROUND

Plaintiff Integrated Solutions International, LLC ("Integrated") is a North Carolina limited liability corporation with its principal place of business in Winston-Salem, North Carolina. Defendant Central Transport International, INC. ("Central") is a long-distance trucking company organized under the laws of Michigan, with its corporate office located in Warren, Michigan. In this lawsuit, Integrated has sued

Central to recover for monies allegedly owed under a contract involving the sale of certain handheld computers and equipment.

The parties entered into the contract in September 2005. At that time, Central had approximately 175 terminals, 800 trucks and 2,400 trailers, with plans to expand. (Pl.'s Mem. Supp. Summ. J. Ex. A, Dep of John Frank Wysokinski, Jr., Vol. I, 15-16 (Aug. 5, 2008)). In 2005, Central decided to upgrade the pager system used by the company's dock workers and drivers to a more sophisticated computer system, the major component of which was the purchase of handheld computers. (*Id.* at 21; 36-37). The conversion project was given top priority (Pl.'s Mem. Supp. Summ. J. Ex. C, Wysokinski Dep., Vol. II, 269-270 (Sept. 23, 2008)). Central contacted Handheld Products, Inc. ("HHP"), a manufacturer of computers and accessories, to inquire about HHP's products. (Def.'s Br. Supp. Summ. J. Ex. B, Dep. of Michael F. Sweeney, 86-87, July 22, 2008). HHP's president, Charles Osborne, contacted Michael Sweeney, the manager at Integrated, and informed him that Central was looking to replace their computer technology. (*Id.*) Integrated is a reseller of products manufactured by several companies, including HHP. (*Id.* at 28). Osborne told Sweeney that HHP wanted Integrated to act as the middleman, or reseller, between HHP and Central for any products which Central wished to purchase. (*Id.* at 27-28).

Sweeney and Osborne met with Central officials in July 2004. Central requested a price for the handheld computers, which Integrated provided. According

to Sweeney, the initial price quote was based on a minimum of 5,000 units being purchased. (*Id.* at 53; *see also* Pl.'s Mem. Ex. H, Email between Mike Sweeney and Charles Osborne). Central then requested two HHP handheld computers for a trial period, which Integrated supplied in September 2004.

In early 2005, Sweeney contacted Bill Sieber, at Central, to determine the success of the handheld computers. Seiber informed Sweeney that C.J. Wysokinski was Central's new head of information technology and that all pricing information for any computers and computer accessories should be sent to Wysokinski (Sweeney dep. 105-07). On February 11, 2005, Sweeney emailed to C. J. Wysokinski a price list he had prepared for handheld computers and accessories (*Id.* at 107-08; Pl.'s Mem. Supp. Summ. J. Ex. G). This price list included both handheld computers and accessories and gave a price list based on a purchase of approximately 5,000 "units." (*Id.*)

According to Integrated, Sweeney sought confirmation from HHP of the price Integrated had quoted to Central. Osborne, at HHP, confirmed the price, provided there was a commitment to purchase 5,000 units. (Pl.'s Mem. Supp. Summ. J. Ex. H). Sweeney testified in his deposition that Integrated and HHP were under the impression that Central would be placing a single order for 5,000 handheld computers when they provided the pricing quote. Central clarified, however, that it would not be placing a single order but in fact would be rolling out its deployment of handheld computers over time. Because Integrated's price quotations were good

for only thirty days, Central sought to lock in the discounted price for the duration of the rollout. (Sweeney dep. 126-129). The parties continued negotiations, and developed a master order contract which established fixed pricing for the duration of the upgrade project, a minimum order requirement of 200 handheld "units" per month, and a single project deposit of $50,000. (*Id.* at 148-49). This contract consisted of an Order Confirmation (O.C. 9115), a Corporate Pricing Document, and Integrated's Standard Terms and Agreements. (Pl. Mem. Supp. Summ. J. Ex. K).

On September 27, 2005, Sweeney sent John Rosa, an employee of Central, a copy of the contract memorializing the parties' agreement (Pl. Mem. Supp. Summ. J., Ex. I). The same day, Rosa sent Wysokinski a memorandum summarizing the terms of the agreement and asking Wysokinski to review the Order Confirmation and either suggest changes or sign the contract if there were no revisions necessary (*Id.*, Ex. J). Wysokinski signed the document. The terms of the contract, which are at the heart of this dispute, include in relevant part:

TERM AND PAYMENT

Central Transport agrees to purchase all its handheld computer and related accessories ("Handheld Equipment") requirements for its handheld computer projects from Integrated Solutions, at a minimum quantity of 200 Handheld units per month. Pricing shall be based on the Corporate Pricing document attached hereto, and the terms of this Order Confirmation and attachments shall control over any contrary provisions in any purchase orders. This agreement shall become effective upon Central Transport's payment of all outstanding invoices pending from Integrated Solutions as of the date of this Order Confirmation; it shall last for twelve months from the above date and

-4-

> shall be renewed automatically thereafter from year to year unless either party provides at least 45 days' written notice of intent not to renew prior to the expiration of the then existing term. A $50,000 deposit (itemized above) shall be required before Integrated Solutions is required to place the first order with the manufacturer, such deposit shall be applied to the invoice for the last shipment to occur under this agreement as extended by any renewals thereof.

Contract, p.1 ("O.C. 9115"). The "Order Confirmation" is the first page of the contract; the remaining pages include pricing information for the handheld configurations and accessories, and three pages of additional terms, including two pages of standard terms and conditions. The boilerplate language in the contract provides, in relevant part:

> This Agreement between Buyer and Supplier in connection with goods identified elsewhere herein consists in its entirety of the terms and conditions appearing in this document in lieu of all others, and supercedes all previous communications, representations and agreements, oral or written, between the parties hereto with respect to the subject matter hereof. No modifications shall be effected or implied by the acknowledgment or acceptance of Buyer's purchase order form, or other documents, containing terms or conditions in addition to or in variance with those set forth herein.
>
> \*\*\*
>
> This Agreement shall be interpreted in accordance with the laws of North Carolina.

The order confirmation was signed by Wysokinski, Central's Chief Information Officer, and was returned to Integrated along with the $50,000 deposit. Following the execution of the agreement, Central began purchasing products under the agreement. During the first year of the agreement, Central purchased 6,133 pieces

-5-

of equipment from Integrated, at least 1,500 of which were handheld computers. (Wysokinski dep., Ex. 13). In September 2006, the agreement automatically renewed under the terms of the agreement. From September 2006 until February 2007, Central purchased at least 5,092 products from Integrated, of which 1,400 were handheld computers. After February 2007, no further orders for equipment were placed by Central. On May 2, 2007, Sweeney sent an email to Rosa (at Central) concerning several outstanding invoices. In this email, Sweeney reminded Rosa that Central had taken delivery of 3,300 of the 4,800 units "agreed to" and that Central needed to purchase an additional 1,500 units to fulfill the agreement. (Pl.'s Mem. Supp. Summ. J. Ex. L). On August 23, 2007, Sweeney wrote Wysokinski, reminding him that Central was still obligated to purchase 1,500 additional computers under the agreement prior to September 27, 2007. The agreement automatically renewed on September 27, 2007, for another 12-month period.

Integrated filed this lawsuit in state court on October 9, 2007. It was removed to federal court on November 16, 2007 (docket no. 1). In the complaint, Integrated alleged that Central breached the contract by: (1) failing to order approximately 1,500 computers during the 2006-2007 term of the contract; (2) failing to place any order for handheld computers during the 2007-2008 term; (3) purchasing handheld computers and related accessories from vendors other than Integrated; and (4) failing to give Integrated adequate assurances that it would take appropriate steps

to meet its contractual obligations. Both parties have moved for summary judgment on this claim.

STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party.

*Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

DISCUSSION

Under North Carolina law, a party needs to prove only two elements to establish a breach of contract: (1) the existence of a valid contract and (2) breach of one or more terms of the contract. *Johnson v. Colonial Life & Acc. Ins. Co.*, 173 N.C. App. 365, 369, 618 S.E.2d 867, 870 (2005). A breach of contract is only actionable if a material breach occurs - that is, one that substantially defeats the purpose of the agreement or that goes to the very heart of the agreement, or can be characterized as a substantial failure to perform. *Fletcher v. Fletcher*, 123 N.C. App. 744, 752, 474 S.E.2d 802, 807-08 (1996).

It is clear that there was a valid contract between the parties.[1] It is also undisputed that during the contract period, Central purchased only 3,300 handheld computers from Integrated. Plaintiff contends that the term "Handheld units" in the contract refers to handheld computers, and that Central breached the contract by not purchasing the minimum requirement of 200 handheld computers each month of the contract. Defendant contends that "Handheld units" encompasses not just the

---

[1] Although Central avers in a footnote in its brief that it "disputes that O.C. 9115 constitutes a binding contract" (Def.'s Br. Supp. Summ. J., docket no. 36, at 10 n. 13), there is no real argument made by Central that the parties were not operating under a valid contract. Moreover, it is clear that both parties conducted business as if there were a valid contract in place; that is, during the term of the contract, Central placed orders for equipment from Integrated and made payments for equipment purchased pursuant to the contract, and Integrated shipped the equipment to Central.

-8-

Case 1:07-cv-00877-JAB-WWD   Document 44   Filed 03/03/09   Page 8 of 12

handheld computers but also related items and accessories, and that Central fulfilled the contract by purchasing both computers and accessories.

Each party here advances a plausible interpretation of the provision in the contract requiring purchase of "200 Handheld units per month." Central contends that when looking at the contract as a whole, it clearly dealt with more than just handheld computers and that all the terms of the contract apply to any "Handheld Equipment," not just handheld computers. Central points to the grammar and capitalization used in the contract itself, arguing that the use of a lower-case "h" in the word "handheld," followed immediately by the word "computer," which is different from the wording and capitalization of "Handheld units," indicates that the two terms mean something different. Central also points out that the corporate pricing document itself contains prices for all Handheld Equipment, not just computers. Finally, Central's witness, Mr. Wysokinski, testified that he understood the term "handheld units" to mean "units" of "Handheld Equipment." (Wysokinski dep. 106).

Integrated argues, conversely, that the plain language of the contract and the parties' performance under it demonstrate that the term "Handheld units" means handheld computers. Integrated points out that on its purchase orders, Central consistently used the term "units" to refer to handheld computers and that the communications between the parties clearly show that the terms "Handheld units" and "units" refer to handheld computers, not to related accessories. Sweeney testified that in the industry, the term "handheld" means a handheld computer.

-9-

Case 1:07-cv-00877-JAB-WWD   Document 44   Filed 03/03/09   Page 9 of 12

(Sweeney dep. 56). Integrated further argues that Mr. Wysokinski's testimony was evasive at best and contradictory at worst and therefore there is no genuine issue of material fact with regard to the meaning of the disputed term.

Because the parties disagree over the proper interpretation of a term in their contract, the court must look at whether that language can be interpreted to support one of their proffered meanings as a matter of law. An important step in contract interpretation is determining whether a disputed term is ambiguous or unambiguous. When a contract is clear and unambiguous on its face, it will be enforced as written by the court as a matter of law. *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 421-22, 547 S.E.2d 850, 852 (2001). Conversely,

> if the agreement is ambiguous, . . . interpretation of the contract is a matter for the jury. Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties. The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.

*Id.* at 422, 547 S.E.2d at 852 (internal citation and quotation omitted); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 958 F. Supp. 1087, 1094 (W.D.N.C. 1997) ("An agreement is ambiguous when it is susceptible to two reasonable interpretations, and the question of ambiguity is one for the Court."), *rev'd on other grounds*, 155 F.3d 331 (4th Cir. 1998); *Int'l Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989) ("Ambiguities in contracts are to be resolved by a trier of fact upon consideration of a range of factors including the expressions used, the subject matter, the end in view, the

purpose and the situation of the parties."). As the North Carolina Court of Appeals further explained in another case:

> [I]f the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent . . . to show and make certain what was the real agreement between the parties; and in such a case what was meant, is for the jury, under proper instructions from the court.

*Cleland v. Children's Home, Inc.*, 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983) (citation and quotation omitted).

Applying these legal principles to the facts in this case, the court finds that the clause in the contract by which Central agrees to purchase "200 Handheld units per month" is ambiguous because it is not clear what the term "Handheld units" means. The specific term "Handheld unit" is not defined in the contract. In fact, the first line of the contract term identifies "handheld computer and related accessories" as "Handheld Equipment," but the minimum purchase requirement included later in the same sentence refers to 200 "Handheld units," a term which is not defined. While ambiguous contracts must be construed against the drafter (Integrated in this case), that does not automatically mean that Central prevails. *See Novacare Orthotics & Prosthetics East, Inc. v. Speelman*, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000). Both parties make strong arguments as to their understanding of what the

Case 1:07-cv-00877-JAB-WWD   Document 44   Filed 03/03/09   Page 11 of 12

contract meant, but the fact remains that the terms of the contract are ambiguous at best and the parties' intent is a question for the jury, not the court.[2]

Having concluded, therefore, that the parties' agreement was ambiguous, the court recommends that both motions for summary judgment be denied.

CONCLUSION

For these reasons, it is **RECOMMENDED** that Plaintiff's motion for summary judgment (docket no. 32) be **DENIED**. It is **FURTHER RECOMMENDED** that Defendant's motion for summary judgment (docket no. 34) be **DENIED** and that the matter proceed to trial.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
March 3, 2009

---

[2] In its answer, Central asserts waiver and estoppel as defenses to Plaintiff's breach of contract claim. Given the procedural posture of the case, and in light of the court's recommendation that summary judgment be denied, it would be premature to address those defenses at this time. Central, of course, is free to raise those defenses at trial.